IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
Milwaukee Division

| | |
|---|---|
| SCHUYLER FILE, | |
| Plaintiff, | No. 19-1063 |
| v. | |
| JILL M. KASTNER, in her official capacity as president of the State Bar of Wisconsin; LARRY MARTIN, in his official capacity as executive director of the State Bar of Wisconsin; Chief Justice PATIENCE ROGGENSACK, Justices SHIRLEY ABRAHAMSON, ANN WALSH BRADLEY, ANNETTE ZIEGLER, REBECCA BRADLEY, DANIEL KELLY, and REBECCA DALLET, in their official capacities as members of the Wisconsin Supreme Court, | *Complaint* |
| Defendants. | |

# COMPLAINT

1. The First Amendment guarantees a right to associate and a right *not* to associate, *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1421 (2016), and those rights are incorporated against the states by the Due Process Clause of the Fourteenth Amendment.

1

2. A state requirement that forces people to associate must "be a comprehensive regulatory scheme" that passes at least exacting scrutiny; namely, it must "serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 310 (2012). Regulatory schemes meeting these standards are "exceedingly rare." *Id*.

3. The State of Wisconsin's regulatory scheme for licensing attorneys by requiring attorneys to join the State Bar of Wisconsin is not narrowly tailored to serve a compelling government interest. *See Harris v. Quinn*, 573 U.S. 616, 655 (2014).

4. At the same time, the State of Wisconsin's requirement of mandatory membership in and dues for the State Bar of Wisconsin for all attorneys licensed to practice in the courts of the state forces attorneys to associate with and subsidize an organization that purports to speak on their behalf regarding controversial legal, legislative, and political matters. *See Janus v. AFSCME,* 138 S. Ct. 2448 (2018).

5. Plaintiff Schuyler File therefore brings this suit against the president and executive director of the State Bar of Wisconsin and the Chief Justice and Justices of the Wisconsin Supreme Court under 42 U.S.C. § 1983, seeking declaratory and injunctive relief for their violations of his rights.

## PARTIES

6. Plaintiff Schuyler File is an attorney in the private practice of law who works and resides in Waukesha County, Wisconsin. He has been a member of the State Bar of Wisconsin since December 2017, when he moved to this state to pursue a new career opportunity. He previously practiced in Indiana, a state that does not have a mandatory bar.

7. Defendants Jill M. Kastner and Larry Martin are the president and executive director, respectively, of the State Bar. In those roles, they are responsible for maintaining the mandatory membership requirement and collecting the mandatory dues. Rogers is also an attorney with the Milwaukee office of Legal Action of Wisconsin. Martin's offices are in Dane County, Wisconsin.

8. Defendants Chief Justice Patience Roggensack and the justices of the Wisconsin Supreme Court are responsible for promulgating the Supreme Court Rules (SCR). These rules make bar membership mandatory for attorneys in Wisconsin. SCR 10.01(1). The rules also empower the bar to set the annual dues attorneys must pay. SCR 10.03(5). Their offices are in Dane County, Wisconsin.

## JURISDICTION AND VENUE

9. This case raises claims under the First and Fourteenth Amendments of the United State Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

10. Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2) because the plaintiff and lead defendant are located in and a substantial portion of the events giving rise to the claims occurred in the Eastern District of Wisconsin.

## FACTUAL ALLEGATIONS

11. The rules adopted by the justices of the Wisconsin Supreme Court compel every attorney to belong to the State Bar of Wisconsin in order to practice law in Wisconsin. SCR § 10.01(1) ("membership in the association shall be a condition precedent to the right to practice law in Wisconsin."); § 10.03(1); § 10.03(4)(a).

12. The rules adopted by the justices of the Wisconsin Supreme Court authorize the State Bar to collect dues from all of its members. SCR § 10.03(5)(a). In 2018 the dues were $258.

13. As a Wisconsin attorney, Mr. File is forced to belong to the State Bar and pay its dues in order to pursue his profession in the state. If he failed to do so, he could be sent to jail for a year and fined $500 or both for engaging in the unauthorized practice of law. Wis. Stat. § 757.30.

14. Defendants Ms. Kastner and Mr. Martin act under color of state law in enforcing mandatory membership and collecting dues. The state bar is somewhat unique in its nature as both an agency of the state Supreme Court and a trade association, but the U.S. Supreme Court has held that its guild-like qualities make

4

it an appropriate subject for review as a mandatory association and compelled subsidy. *Keller v. State Bar of California*, 496 U.S. 1, 11-13 (1990).

15. The State Bar does not serve as the formal regulatory system for legal ethics in Wisconsin. The Board of Bar Examiners is a state agency of the judicial branch responsible for ensuring the character and competence of new entrants to the practice. SCR Ch. 40. The Board of Bar Examiners is also the state agency responsible for ensuring compliance with the Wisconsin Supreme Court's rules for continuing legal education. SCR Ch. 31. The Office of Lawyer Regulation is a state agency of the judicial branch responsible for ensuring compliance with the Rules of Professional Conduct governing attorneys in Wisconsin. SCR Ch. 21. The Judicial Education Committee is a committee appointed by the Wisconsin Supreme Court to ensure compliance with the Court's rules for continuing education for judges. SCR Ch. 32. The Judicial Commission is a state agency responsible for ensuring compliance with the Judicial Code of Conduct. Wis. Stat. Ch. 757.

16. Twenty other states have voluntary state bars that do not coerce attorneys to be members or pay dues to the bar.

17. When the State Bar lobbies on "general policy items of importance to the legal profession," it does so "on behalf of the entire membership," State Bar of Wisconsin Website, "Government Relations," at https://www.wisbar.org/aboutUs/GovernmentRelations/Pages/government-relations.aspx#/, purporting to represent the views of all members. Last legislative

5

session, the State Bar spent over $520,000 lobbying the Wisconsin state legislature. Wisconsin Ethics Commission Website, "Eye on Lobbying," https://lobbying.wi.gov/Who/PrincipalInformation/2017REG/Information/7048?tab=Profile. The State Bar also engages in legislative advocacy activities with Congress and through the American Bar Association. *See* "Board Adopts Policy on Dues Rebate Amount, Supports Pro Hac Vice Exemption," WisBarNews (Feb. 9, 2018), https://www.wisbar.org/NewsPublications/Pages/General-Article.aspx?ArticleID=26170 (deduction will cover "direct lobbying on policy matters before the Wisconsin Legislature and U.S Congress.").

18. The State Bar also engages in a wide variety of ideologically charged activities that fall outside the formal confines of "lobbying."

19. For instance, the State Bar's "Legal Innovation in Wisconsin" initiative for 2018 chose as one of its six "Legal Innovators" the founder of TransLaw Help Wisconsin, a clinic for transgendered people. Ed Finkel, "6 Big Ideas: 2018 Wisconsin Legal Innovators," Wis. Law. (Nov. 2018). The article notes that she was coauthor of *Sexual Orientation, Gender Identity, and the Law*, a book published by the State Bar in 2018.

20. The State Bar's 2018 annual meeting included among its featured speakers Richard Painter, who served in the White House of George W. Bush but became a Democrat and was at the time of his speech a Democratic candidate for U.S. Senate. "Annual Meeting 2018," State Bar of Wisconsin,

https://www.wisbar.org/AMC/2018/pages/speakers.aspx. News reports describe Painter as a "vocal," "visible," "prominent," "prolific," "unflagging," and "vociferous" critic of President Trump.

21. These examples illustrate the simple reality that virtually everything the State Bar does takes a position on the law and matters of public concern. The recipients of awards, the topics and authors it selects for books and articles, the topics and speakers it selects for continuing legal education seminars and conferences—everything about the State Bar requires it to pick-and-choose as it speaks and publishes about the law. Like the public-sector collective bargaining in *Janus*, almost all of its activities are inherently about the law and thus of public concern; there can be no logical line drawn that sets "direct lobbying" on one side and renders everything else non-ideological and of private concern. When the State Bar picks the founder of TransLaw to write a supposedly definitive, restatement-like book on sexual orientation in Wisconsin law, it will likely get a different text than if it had asked the legal counsel to Wisconsin Family Action. When it asks a prominent in-house corporate attorney to write a neutral book on contracts, it will likely get a different text than if it had asked a tenants' rights lawyer. Because the State Bar is always speaking about the law, and because lawyers come to the law with different viewpoints, jurisprudential principles, backgrounds, and experiences, the State Bar's speech on all legal topics contains some element of ideology and touches on issues of public concern.

# COUNT I

**By continuing to mandate his membership and charge him dues, Defendants are violating Mr. File's First Amendment rights to free speech and freedom of association.**

22. The allegations contained in all preceding paragraphs are incorporated herein by reference.

23. The rights to free speech and freedom of association in the First Amendment have been incorporated to and made enforceable against the states through the Fourteenth Amendment guarantee of Due Process. *NAACP v. Alabama*, 357 U.S. 449 (1958); *Gitlow v. New York*, 268 U.S. 652 (1925).

24. The Chief Justice and Justices of the Wisconsin Supreme Court have adopted a requirement of mandatory membership and dues for all attorneys licensed in Wisconsin.

25. Ms. Kastner and Mr. Martin are enforcing that mandatory membership requirement and charging dues from Mr. File under color of state law.

26. Virtually every aspect of the association led by Ms. Kastner and Mr. Martin is public-facing in that it touches upon the law, and therefore forces Mr. File to be associated with and support speech with which he may not agree.

27. Mr. File does not affirmatively consent to being a member of the State Bar or paying dues to the State Bar.

8

Case 2:19-cv-01063-LA   Filed 07/25/19   Page 8 of 10   Document 1

28. The actions of the Defendants constitute a violation of Mr. File's First Amendment rights to free speech and freedom of association to not join or subsidize an organization without his affirmative consent.

29. The Defendants lack a compelling state interest to justify their actions.

30. The Defendants' actions are not narrowly tailored to the means least restrictive of Mr. File's freedoms.

31. Mr. File is entitled to an injunction under 42 U.S.C. § 1983 ordering Defendants to immediately end his membership and stop charging him dues.

## PRAYER FOR RELIEF

Plaintiff Schuyler File respectfully requests that this Court:

    a. Declare that requiring the Wisconsin Supreme Court's rules requiring Mr. File to belong to the State Bar of Wisconsin are unconstitutional.

    b. Enjoin the Justices of the Wisconsin Supreme Court from enforcing their rules requiring State Bar membership through the attorney disciplinary process;

    c. Enjoin Ms. Kastner and Mr. Martin from enforcing the mandatory membership rule or charging mandatory dues to Mr. File;

    d. Award Mr. File his costs and attorneys' fees under 42 U.S.C. § 1988; and

  e. Award any further relief to which Mr. File may be entitled.


Dated: July 25, 2019

              Respectfully Submitted,

              **SCHUYLER FILE**

              By: *[signature]*

Daniel R. Suhr (Wisconsin #106558) (admitted EDWI May 6, 2019)
Jeffrey M. Schwab (pro hac vice motion forthcoming)
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
Telephone (312) 263-7668
Facsimile (312) 263-7702
dsuhr@libertyjusticecenter.org
jschwab@libertyjusticecenter.org

*Attorneys for Plaintiff*