UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCHUYLER FILE,
    Plaintiff,

v.                                                            Case No. 19-C-1063

JILL M. KASTNER, et al.,
    Defendants.

## DECISION AND ORDER

Plaintiff Schuyler File, an attorney admitted to practice in Wisconsin, brings this suit under 42 U.S.C. § 1983 against the president and executive director of the State Bar of Wisconsin and the chief justice and justices of the Wisconsin Supreme Court. He alleges that the state's requirement that he be a member of the State Bar of Wisconsin violates his rights under the Constitution's First Amendment. Before me now are the defendants' motions to dismiss the complaint for lack of standing and for failure to state a claim upon which relief may be granted.[1]

## I. BACKGROUND

The State Bar of Wisconsin is an organization created by Wisconsin law through rules promulgated by the Wisconsin Supreme Court. It is an "integrated bar," that is, it is an association of attorneys in which membership and dues are required as a condition of practicing law in the state. *Keller v. State Bar of Cal.*, 496 U.S. 1, 4–5 (1990). Integrated bars have been subject to numerous constitutional challenges over the course of the last

---

[1] The supreme court justices have also filed a motion to stay discovery pending a ruling on their motion to dismiss. Because I am deciding the motion to dismiss now, I will deny the motion to stay as moot.

sixty years. The attorneys who bring these challenges usually allege that the state's conditioning their ability to practice law on their joining and financially supporting an organization that espouses viewpoints with which they may disagree violates their rights to free speech and association under the First Amendment. In prior cases, the Supreme Court of the United States has held that an integrated bar does not violate an attorney's First Amendment rights so long as the bar uses the attorney's mandatory dues payment only for purposes that are germane to the goals of "regulating the legal profession and improving the quality of legal services." *Id.* at 13–14; *see also Lathrop v. Donohue*, 367 U.S. 820 (1961) (holding that Wisconsin's integrated bar did not violate the First Amendment). Under the holding of these cases, an integrated bar is permitted to engage in speech on topics that are not germane to one of these two goals. However, if it does so, it must rely on a source of funding other than mandatory dues payments. *See Keller*, 496 U.S. at 13–14. To implement the distinction between speech that is germane to the goals of regulating the legal profession and improving the quality of legal services and speech that is not germane to these goals, the State Bar of Wisconsin allows its members to take what it known as a "*Keller* dues reduction." If the member does not take this deduction, then the member is presumed to consent to the bar's using this part of his or her dues payment to fund speech that is not germane to regulating the legal profession or improving the quality of legal services.

      The plaintiff is an attorney in private practice who moved to Wisconsin in 2017. He previously practiced in Indiana, which does not have an integrated bar. He does not wish to be a member of, or to pay dues to, the State Bar of Wisconsin, *see* Compl. 27, and he believes that conditioning his ability to practice law on bar membership violates his First

Amendment rights. The plaintiff recognizes that, in light of *Keller*, the State Bar of Wisconsin has generally been regarded as constitutional. *See, e.g., Kingstad v. State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010). However, he contends that two cases decided by the Supreme Court of the United States in recent years have either narrowed or implicitly overruled *Keller. See Janus v. Am. Fed'n of State, County & Mun. Employees*, 138 S. Ct. 2448 (2018); *Harris v. Quinn*, 573 U.S. 616 (2014). The plaintiff contends that, under the reasoning of these cases, the State Bar of Wisconsin cannot constitutionally enforce its mandatory membership requirement. He thus commenced the present action under 42 U.S.C. § 1983 against the president and the executive director of the State Bar of Wisconsin (collectively, the "Bar defendants") and the chief justice and justices of the Wisconsin Supreme Court. He seeks a declaration that the Wisconsin Supreme Court's rule requiring him to belong to the bar is unconstitutional as well as an injunction that would prevent the Bar defendants and the justices from enforcing the mandatory membership rule or charging him mandatory dues payments.

The Bar defendants and the justices have each filed a motion to dismiss the complaint. All defendants argue that the complaint fails to state a claim because the rules of the State Bar comply with *Keller* and therefore must be regarded as constitutional unless the Supreme Court overrules *Keller*. In addition, the justices argue that the plaintiff does not have standing to seek relief against them and that they are immune from claims for the type of injunctive relief he seeks. I consider these matters below.

## II. DISCUSSION

### A. Standing

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The justices contend that the plaintiff cannot show that their conduct caused him to suffer an injury in fact. An injury in fact must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560. However, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). Put differently, "[a] plaintiff 'does not have to await the consummation of threatened injury to obtain preventive relief.'" *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 473 (7th Cir. 2012) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). To satisfy the injury-in-fact requirement based on the likelihood of a future injury, the plaintiff must show only that he or she faces "a realistic danger of sustaining a direct injury as a result of the [law]'s operation or enforcement." *Id.*

In the present case, there is no dispute that the plaintiff has standing to seek declaratory and injunctive relief against the Bar defendants based on the likelihood that he would suffer a future injury. If the plaintiff stopped paying his mandatory bar dues, his membership in the State Bar would be automatically suspended. *See* Wis. Sup. Ct. R.

4

10.03(6) & Wis. State Bar Bylaws art. I, § 3.[2] During the suspension, the plaintiff would be forbidden from practicing law. Wis. Sup. Ct. R. 10.03(6). Obviously, losing the ability to lawfully practice one's profession is an injury in fact. Moreover, the plaintiff does not have to actually refuse to pay his mandatory dues and thus incur an automatic suspension before he is allowed to seek preventative relief. *See, e.g., Schirmer v. Nagode*, 621 F.3d 581, 586 (2010) ("A person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment[.]"). Rather, he will have standing so long as it is substantially likely that if he stops paying his dues, he will suffer an injury. And here, because a suspension automatically follows nonpayment of dues, an injury to the plaintiff is not merely substantially likely, it is certain to occur. Thus, the plaintiff unquestionably has standing to seek an injunction preventing the Bar defendants from assessing and collecting mandatory dues payments.

The justices, however, contend that even if the plaintiff would suffer an injury if he stopped paying his bar dues, they would not be the ones to inflict it. They point out that the supreme court does not initiate disciplinary proceedings against attorneys; instead, such proceedings are commenced by an agency of the court—the Office of Lawyer Regulation ("OLR"). *See* Wis. Sup. Ct. R. 21.02(1). The only role the supreme court plays in lawyer discipline is to adjudicate misconduct complaints filed by OLR and to impose an appropriate sanction if misconduct is found. *See* Wis. Sup. Ct. R. 21.09(1). However, while it is true that the supreme court does not initiate misconduct proceedings, it does not follow that the plaintiff lacks standing to seek an injunction against the court's

---

[2] The State Bar Bylaws are codified as an appendix to Chapter 10 of the Rules of the Wisconsin Supreme Court.

5

disciplining him for failing to pay his bar dues. Consider what is likely to occur if the plaintiff stops paying his dues. Once they are overdue for more than 120 days, his license to practice law will automatically be suspended under Rule 10.03(6) and the State Bar Bylaws. If the plaintiff continues to practice law after his automatic suspension, he will be in violation of the supreme court's rules and will be subject to discipline for practicing while his license was suspended. *See, e.g., In re FitzGerald*, 304 Wis. 2d 592, 597–98 (2007) (disciplining lawyer for practicing during administrative suspension for failure to pay bar dues). Once OLR learns that the plaintiff is continuing to practice law, it will likely commence disciplinary proceedings against him. Without an injunction against enforcement of the mandatory bar requirement, the supreme court will find the plaintiff guilty of a rules violation and impose discipline, which could include revoking his law license and imposing a monetary penalty. *See* Wis. Sup. Ct. R. 21.16(1m). Any discipline the court imposes would be an injury in fact. Because this chain of events is substantially likely to occur if the plaintiff stops paying his bar dues yet continues to practice law in Wisconsin, the plaintiff has standing to obtain pre-enforcement relief. For again, a plaintiff does not have to risk arrest or incurring other forms of harm in order to have standing to obtain an injunction to prevent that harm from coming to pass. *Schirmer*, 621 F.3d at 586.

The justices point out that, in 1993, the Seventh Circuit determined that a lawyer lacked standing to pursue a claim for injunctive against the supreme court to prevent them from enforcing the mandatory dues requirement. *See Crosetto v. State Bar of Wis.*, 12 F.3d 1396, 1403 (7th Cir. 1993). In that case, however, the court focused on the lack of evidence suggesting that the supreme court was likely to discipline a lawyer for failing to pay bar dues. The court noted that the plaintiff "conceded that he was unaware of any

6

Wisconsin lawyer ever being disciplined by the Justices for that lawyer's failure to pay dues to the integrated bar." *Id.* Things have apparently changed since 1993. The plaintiff has cited at least two cases in which the Wisconsin Supreme Court disciplined attorneys for practicing law after failing to pay mandatory dues. *See In re Capistrant*, 364 Wis. 2d 530, 534 (2015); *In re FitzGerald*, 304 Wis. 2d at 597–98. Moreover, unless the supreme court decides to voluntarily abandon the mandatory dues requirement, it stands to reason that the court will discipline attorneys who practice law without paying their dues. Because the supreme court has not suggested that it intends to abandon its rule requiring bar membership for all attorneys, I conclude that the plaintiff has standing to seek declaratory and injunctive relief to prevent the supreme court from disciplining him for failing to pay his mandatory dues.

**B.     Immunity**

The justices next contend that they are immune from the plaintiff's suit for injunctive relief. Here, the defendants rely on a Supreme Court decision holding that state supreme court justices are immune from suits for injunctive relief when they are sued in their legislative capacity, *i.e.*, as promulgators of the rules governing lawyers. *See Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980). However, the plaintiff here does not sue the justices in their capacities as rule makers—he does not seek an injunction requiring them to enact, amend, or repeal any rule. Rather, he sues the justices in their capacity as adjudicators of disciplinary matters—he seeks an injunction preventing them from disciplining him for practicing law while he is not a member of the bar. The Supreme Court has held that state judges in their judicial

7

capacities are not immune from suits for injunctive relief. *See Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). Accordingly, the justices are not immune from suit in this matter.

**C.     Merits**

I now turn to the merits of the plaintiff's constitutional claim. The relevant facts are undisputed, and the plaintiff's claim presents a pure question of law. Therefore, his claim may be resolved on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Before moving on, I note that the plaintiff does not bring an as-applied challenge to the integrated bar in which he contends that the State Bar has used mandatory dues payments to fund speech or activities that are not germane to the goals of regulating the legal profession or improving the quality of legal services. *Cf. Kingstad*, 622 F.3d at 718–21 (considering "germaneness" claim). Rather, the plaintiff brings a facial challenge to the mandatory dues requirement, contending that it is inconsistent with Supreme Court cases decided since *Keller*. For this reason, I do not address the Bar defendants' arguments relating to a possible as-applied challenge. *See* Br. in Supp. at 11–15. Moreover, although the plaintiff in his brief cites various State Bar activities and publications and contends that they may not constitutionally be funded with mandatory bar dues, I do not understand him to be claiming that the Bar funded these activities in violation of *Keller*. Instead, I understand him to be using these activities as examples to show that the State Bar's expression presents the same kinds of problems that concerned the Supreme Court in *Janus*.

The heart of the plaintiff's argument is that *Harris* and *Janus* call into question *Keller*'s holding that an integrated bar is constitutional so long as the bar uses mandatory dues payments only to fund matters that are germane to the goals of regulating the legal

8

profession and improving the quality of legal services. The plaintiff first contends that, in *Harris*, the Court narrowed *Keller* by suggesting that a bar cannot use mandatory dues payments to fund speech unless that speech is germane to the goal of regulating the legal profession. The plaintiff understands the *Harris* Court to have implied that a bar cannot use mandatory dues to fund speech that is germane to the goal of improving the quality of legal services. The plaintiff then contends that, by overruling *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the Court in *Janus* undermined a key premise of *Keller*, which was that an enforceable line could be drawn between speech that is germane to a certain topic and speech that is not. The plaintiff contends that the combined effect of *Harris* and *Janus* should cause the Supreme Court to overrule *Keller* and hold that integrated bars such as Wisconsin's are unconstitutional.

Importantly, however, a lower court cannot overrule a Supreme Court case, even if later Supreme Court cases call the holding of the earlier case into question. *See, e.g., State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents."); *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (reaffirming that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"); *Price v. City of Chicago*, 915 F.3d 1107, 1111 (7th Cir. 2019) (quoting *Khan* and *Agostini*); *Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago*, 567 F.3d 856, 857 (7th Cir. 2009), *overruled on other grounds by McDonald v. City of Chicago*, 561 U.S. 742 (2010); ("Repeatedly, in decisions that no one thinks fossilized, the Justices have directed trial and appellate judges to implement the Supreme Court's holdings even if the reasoning in

9

later opinions has undermined their rationale."). A lower court may not overrule a Supreme Court case even if later cases "have deeply shaken" the earlier case's foundation, *Price*, 915 F.3d at 1119, or "demolished" its "intellectual underpinning," *Nat'l Rifle Ass'n*, 567 F.3d at 858. Thus, if a Supreme Court case has direct application to a case, a lower court must follow it even if the court thinks it probable that the Supreme Court will overrule the case in the future.

Here, the plaintiff concedes that *Keller* has direct application to his claim. But for several reasons, he contends that I am still free to disregard it. First, he contends that *Harris* "narrowed" *Keller* by limiting the use of mandatory dues to activities "connected with proposing ethical codes and disciplining bar members." *Harris*, 573 U.S. at 655. But *Harris* did not involve mandatory state bar membership and did not purport to partially overrule *Keller* by holding that mandatory bar dues could not be used for all the purposes deemed acceptable in *Keller*. The passage from *Harris* that the plaintiff cites is merely a summary of *Keller*'s holding. Nothing in *Harris* implies that the summary was intended to narrow or otherwise disturb *Keller*. Indeed, in the paragraph following the sentence the plaintiff cites, the Court favorably describes *Keller*'s full holding: "The portion of the rule that we upheld [in *Keller*] served the 'State's interest in regulating the legal profession and improving the quality of legal services.'" *Id.* Thus, *Harris* cannot be understood as a narrowing of *Keller*.

Second, the plaintiff contends that because, in the wake of *Janus*, the Supreme Court entered a "grant, vacate, and remand order" in an Eighth Circuit case involving mandatory bar membership, *see Fleck v. Wetch*, 139 S. Ct. 590 (2018), lower courts are now free to "reconsider *Keller* in light of *Janus*," Br. in Opp. at 21. However, the Court's

10

entering a GVR order does not grant lower courts permission to overrule Supreme Court precedent. All a GVR order does is signal that the Supreme Court would like the lower court to reconsider its vacated decision in light of the new precedent. *See Klikno v. United States*, 928 F.3d 539, 544 (7th Cir. 2019). Even the lower court subject to the GVR order remains bound by Supreme Court cases that the Court has not yet overruled. *See Fleck v. Wetch*, 937 F.3d 1112, 1114–15 (8th Cir. 2019) (Eighth Circuit deems itself bound by *Keller* even after Court entered GVR order).

Third, the plaintiff contends that "*Janus* implicitly overruled *Keller*." Br. in Opp. at 21. This argument relies on statements in cases acknowledging that the Supreme Court may overrule a case without explicitly saying so. *See Levine v. Heffernan*, 864 F.2d 457, 461 (7th Cir. 1988). However, before a lower court may conclude that the Supreme Court has implicitly overruled one of its precedents, the lower court must be "certain or almost certain that the decision or doctrine would be rejected by the higher court if a case presenting the issue came before it." *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 741 (7th Cir. 1986). "This is a high standard and will rarely be met." *Id.* And it is not met here. *Janus* did not involve mandatory bar membership; it involved compelled subsidy of a public-sector labor union. Although the Court's reasoning in *Janus* might in some respects support the argument that mandatory bar membership is unconstitutional, the Court did not in any way suggest that it was overruling *Keller*. Moreover, it must be remembered that a lower court is not free to deem Supreme Court precedent defunct even if a later case demolishes the intellectual underpinnings of the earlier case. *Nat'l Rifle Ass'n*, 567 F.3d at 858. A lower court should not be able to evade this restriction by using the reasoning of a later case to deem the earlier case implicitly overruled.

11

In any event, any doubt about whether the Supreme Court implicitly overruled *Keller* in *Janus* is removed by considering the Court's latest action in this area. The premise of the doctrine of implicit overruling is that the Court has already overruled one of its precedents and is merely awaiting an opportunity to make the overruling explicit. *See Levine*, 864 F.2d at 461 (for implied overruling to apply, lower court must be almost certain that "the Court would repudiate the prior ruling if given the opportunity"); *Olson*, 806 F.2d at 741 ("The standard for declaring a decision or doctrine of a higher court defunct is . . . whether the lower court is certain or almost certain that the decision or doctrine would be rejected by the higher court *if a case presenting the issue came before it.*" (emphasis added)). Recently, the Court was presented with an opportunity to overrule *Keller*. In *Jarchow v. State Bar of Wisconsin*, No. 19-C-266, 2019 WL 6728258 (W.D. Wis. Dec. 11, 2019), a Wisconsin attorney alleged that the State Bar of Wisconsin violates the First Amendment by charging mandatory dues. The plaintiff acknowledged that *Keller* was controlling but argued that *Janus* had eroded its foundations. The trial court deemed itself bound by *Keller* and noted that only the Supreme Court may overrule it. *Id.* at *1. After the Seventh Circuit likewise deemed itself bound by *Keller*, the plaintiffs filed a petition for certiorari with the Supreme Court, thus presenting the Court with the opportunity to make its alleged implicit overruling of *Keller* explicit. But the Supreme Court denied the petition for certiorari. *See* Sup. Ct. Docket No. 19-831, 2020 WL 2814314 (June 1, 2020). Because the Supreme Court passed up this opportunity to explicitly overrule *Keller*, it is impossible for a lower court to now conclude that the Supreme Court has already implicitly overruled it. Indeed, although two Justices dissented from the denial of certiorari in *Jarchow*, not even they suggested that the Court had already implicitly

12

overruled *Keller*. To the contrary, they allowed that, although *Janus* called the reasoning in *Keller* into question, its holding could survive "on the basis of new reasoning that is consistent with *Janus*." *Id.* at *1 (Thomas, J., dissenting). They also emphasized that, "[s]hort of a constitutional amendment, only [the Court] can rectify [its] own erroneous constitutional decisions." *Id.* at 2. Thus, the dissenters must have been of the view that the Court did not already implicitly overrule *Keller* in *Janus*.

Accordingly, I conclude that the plaintiff's claim is foreclosed by *Keller*, which only the Supreme Court may overrule. The defendants' motions to dismiss the claim under Rule 12(b)(6) will be granted.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motions to dismiss the complaint for failure to state a claim (ECF Nos. 14 & 19) are **GRANTED**. The motions are denied to the extent they seek dismissal for lack of standing or on immunity grounds.

**IT IS FURTHER ORDERED** that the supreme court justices' motion to stay (ECF No. 16) is **DENIED** as **MOOT**.

Dated at Milwaukee, Wisconsin, this 29th day of June, 2020.

s/Lynn Adelman<br>
LYNN ADELMAN<br>
United States District Judge