

CERTIFIED COPY

A True Copy
Teste:

_Margaret_ _A._ _Mcnaughton_
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## for the Seventh Circuit

———————

No. 20-2387

SCHUYLER FILE,

*Plaintiff-Appellant,*

*v.*

LARRY MARTIN, Executive Director
of the State Bar of Wisconsin, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 19-C-1063 — **Lynn Adelman**, *Judge.*

———————

ARGUED JANUARY 15, 2021 — DECIDED APRIL 29, 2022

———————

Before SYKES, *Chief Judge,* and WOOD and HAMILTON,
*Circuit Judges.*

SYKES, *Chief Judge.* Under rules adopted and enforced by
the Wisconsin Supreme Court, all lawyers licensed to prac-
tice in the state must be members of and pay dues to the
State Bar of Wisconsin, a professional association created by
the court. Attorney Schuyler File contends that requiring
him to join and subsidize the State Bar violates his free-

speech and associational rights under the First Amendment. Recognizing that Supreme Court precedent forecloses this claim, *see Keller v. State Bar of Cal.*, 496 U.S. 1 (1990), File maintains that the Court's more recent cases—particularly *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018)—implicitly overruled *Keller*.

The district court rejected this argument, and properly so. *Keller* may be difficult to square with the Supreme Court's more recent First Amendment caselaw, but on multiple occasions and in no uncertain terms, the Court has instructed lower courts to resist invitations to find its decisions overruled by implication. *Keller* is binding. We affirm.

## I. Background

Wisconsin lawyers must join and pay annual dues to the State Bar of Wisconsin, and active membership in the association is "a condition precedent to the right to practice law" in the state. WIS. S. CT. R. 10.01(1); *see also id.* R. 10.03(5) (establishing the dues requirement); *id.* R. 23.02(1) (providing that no person may practice law in the state without a current license issued by the Wisconsin Supreme Court and active membership in the State Bar). This regulatory regime, often called an "integrated, mandatory[,] or unified bar," *Kingstad v. State Bar of Wis.*, 622 F.3d 708, 713 n.3 (7th Cir. 2010) (quotation marks omitted), authorizes the State Bar to use membership dues to fulfill the purposes for which it was created. These include "aid[ing] the courts in … the administration of justice"; "conduct[ing] a program of continuing legal education"; and "maintain[ing] … high ideals of integrity, learning, competence[,] … public service[,] and high standards of conduct" in the bar of the state. WIS. S. CT.

R. 10.02(2). To those ends, the State Bar hosts seminars, sponsors amicus briefs, publishes a magazine, proposes legal-ethics rules, and lobbies the government. Some of these activities venture into political and socially sensitive subjects.

Failing to pay bar dues can result in serious consequences. Attorneys who fail to pay dues by the annual due date and remain delinquent after notice and the expiration of a specified grace period are automatically suspended. WIS. STATE BAR BY-LAWS art. I, § 3(a). (The administrative suspension is lifted if the delinquent lawyer pays the late dues plus a small penalty, but this remedy is not available if the dues have been in arrears for three years. *Id.* art. I, § 3(c).)

Suspended lawyers cannot practice law. *Id.*; *see also* WIS. S. CT. R. 23.02(1). The state supreme court and every judge in the state receives a certified list of all lawyers suspended for nonpayment of dues. WIS. STATE BAR BY-LAWS art. I, § 3(a). Practicing law while suspended violates state legal-ethics rules. WIS. S. CT. R. 20:8.4(f).

The Office of Lawyer Regulation—the court agency that investigates and prosecutes ethics violations—may initiate proceedings to impose additional sanctions, including full license suspension. *See, e.g.*, *In re FitzGerald*, 735 N.W.2d 913, 916 (Wis. 2007). But the Wisconsin Supreme Court, which has plenary constitutional power to regulate the legal profession in the state, is the ultimate enforcement authority for the lawyer regulatory system—including the licensing rules, bar-membership requirement, and the ethics code—and imposes discipline for violations. WIS. S. CT. R. 21.09; *see also id.* R. 21 pmbl. ("The lawyer regulation system is established to carry out the supreme court's constitutional responsibility

to supervise the practice of law … ."). The Office of Lawyer Regulation acts pursuant to the court's authority and is the court's agent for investigating and prosecuting violations. *See id.* R. 21.13.

Schuyler File is an active, dues-paying member of the State Bar. But he does not want to be. He filed suit challenging the constitutionality of the mandatory bar, naming the association's executive director and its president and the justices of the state supreme court as defendants. He sought a declaration that the mandatory bar is facially incompatible with the First Amendment and an injunction prohibiting the defendants from enforcing the membership and dues requirements.

The justices and State Bar officials filed separate motions to dismiss for lack of subject-matter jurisdiction and failure to state a claim. *See* FED. R. CIV. P. 12(b)(1), (b)(6). Both sets of defendants argued that the Supreme Court's decision in *Keller* precludes File's claim on the merits. The justices also challenged File's standing to sue, arguing that his injury is hypothetical at best and not traceable to them. Additionally, the justices raised a defense of immunity.

The judge rejected the jurisdictional argument, holding that the injury File would suffer if he stopped paying bar dues—automatic suspension of his right to practice law—is certain enough to support his standing to bring this pre-enforcement suit for prospective relief. *File v. Kastner*, 469 F. Supp. 3d 883, 886–87 (E.D. Wis. 2020). The judge also rejected the justices' immunity claim, relying on *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). *File*, 469 F. Supp. 3d at 888. Moving to the merits, the judge dismissed the case, ruling

that File's claim "is foreclosed by *Keller*, which only the Supreme Court may overrule." *Id.* at 891.

## II. Discussion

We review the judge's dismissal order de novo. *Price v. City of Chicago*, 915 F.3d 1107, 1110 (7th Cir. 2019). Our first order of business is the question of standing. The justices (but not the State Bar officials) argue that File alleged nothing more than a hypothetical injury and thus lacks standing to sue.

Article III limits the federal judicial power to "Cases" and "Controversies," which in turn requires the party invoking the jurisdiction of the federal court to establish his standing to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To do so, the plaintiff "must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).

As noted, this is a pre-enforcement suit: File seeks prospective relief based on the threat of injury—suspension of his right to practice law—if he were to refuse to pay bar dues. "It is well-established that pre-enforcement challenges are within Article III." *Ezell v. City of Chicago*, 651 F.3d 684, 695 (7th Cir. 2011) (quotation marks and alterations omitted). For this type of claim, the Article III minimums are satisfied when "there exists a credible threat of prosecution." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotation marks omitted). A person need not violate the law and risk prosecution to bring a pre-enforcement challenge. *Ezell*,

651 F.3d at 695; *see also Schirmer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010). A credible threat of prosecution is sufficient to establish injury in fact; an actual prosecution or other enforcement action is not necessary. *Driehaus*, 573 U.S. at 159.

The justices insist that the threat of disciplinary action against File is entirely hypothetical. That's a puzzling argument in the context of this regulatory scheme. An attorney who fails to pay bar dues is administratively suspended from the practice of law, and every judge in the state receives a list of suspended lawyers. Practicing law while administratively suspended is an ethics violation subject to additional discipline. Under the court's own rules, there is more than a credible *threat* of enforcement: the penalty for nonpayment of dues—administrative suspension of the right to practice law—is *automatic* and universally applicable.

It does not matter that the State Bar processes administrative suspensions or that the Office of Lawyer Regulation initiates misconduct proceedings against lawyers who practice law while suspended. As we've explained, the Wisconsin Supreme Court is the ultimate regulatory authority for the practice of law in the state; it promulgates and enforces the rules governing attorney licensure, bar membership, and ethics. The respective roles of the State Bar and the Office of Lawyer Regulation flow directly from the court.

The justices rely on *Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396 (7th Cir. 1993), but the relevant holding in that case is narrow and does not support their contention that File lacks standing to sue in federal court. Like this case, *Crosetto* was a challenge to Wisconsin's mandatory bar; the plaintiffs named the State Bar, its executive director, and the

justices of the state supreme court as defendants. We af-
firmed the dismissal of the justices from the suit, explaining
that the plaintiffs' attorney had conceded in oral argument
"that he was unaware of any Wisconsin lawyer ever being
disciplined by the [j]ustices for that lawyer's failure to pay
dues to the integrated bar." *Id.* at 1403. Based on that conces-
sion, we held that the claim against the justices was unripe.
*Id.*

Our ripeness holding must be understood in the context
of the arguments raised and addressed in the case. Im-
portantly, the automatic administrative suspension was
never discussed. Moreover, *Crosetto* was decided long before
the elaboration of pre-enforcement standing principles in
*Driehaus*, *Ezell*, and *Schirmer* (among other cases). Our ruling
in *Crosetto* was therefore a limited one; it does not control
here.

The justices also reprise their immunity defense, which
turns on a proper understanding of the nature of the claim
raised in this suit. The justices enjoy immunity from suits
challenging the exercise of their legislative power to draft
and promulgate rules regulating the legal profession. *Sup.
Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 734
(1980). In contrast, they are not immune when sued in their
prosecutorial or enforcement capacity—*provided* that the suit
seeks prospective relief against the enforcement of the
regulatory regime. *Id.* at 736–37; *Reeder v. Madigan*, 780 F.3d
799, 805 (7th Cir. 2015).

In the district court, the parties debated which of these
two roles best describes the capacity in which the justices
have been sued here. The district judge, however, chose a
third option. He construed File's suit as a claim against the

justices in their judicial capacity "as adjudicators of disciplinary matters." *File*, 469 F. Supp. 3d at 888. Relying on *Pulliam*, 466 U.S. at 541–42, he held that the justices are not immune. *File*, 469 F. Supp. 3d at 888.

The judge reached the right destination by the wrong route. This is a straightforward pre-enforcement suit seeking prospective relief enjoining the justices from enforcing the requirements of State Bar membership and payment of compulsory dues. In short, the justices have been sued in their enforcement capacity, not their legislative or judicial capacity. *See Sup. Ct. of Va.*, 446 U.S. at 734 (listing the "issuance of, or failure to amend" legal-ethics rules as legislative activities and "hear[ing] appeals" as adjudicative activity).

The justices resist this conclusion, arguing that because the Office of Lawyer Regulation initiates and prosecutes disciplinary proceedings, their role with respect to the rules regarding bar membership is legislative only. As we've noted, however, the court has plenary constitutional authority to regulate the legal profession. *In re Crandall*, 754 N.W.2d 501, 507 (Wis. 2008) ("[B]ecause the constitutional grants of authority obligate this court to ensure that courts function efficiently and effectively to provide for the due administration of justice, this court has the inherent and exclusive authority and power to regulate and discipline members of the bar in this state."). The court created the Office of Legal Regulation, which acts as its agent in the investigation and initiation of misconduct complaints. The court supervises and controls the actions of the agency and remains the ultimate enforcement authority for the regulation of the bar. Wis. S. Ct. R. 21 pmbl.; *id.* R. 21.03 (providing that the director of the Office of Lawyer Regulation is appointed by and

serves at the pleasure of the state supreme court); *id.* R. 21.12, 21.13 (providing that all components of the lawyer regulatory system act on behalf of the state supreme court). Because File seeks prospective relief enjoining the justices from enforcing the requirements of the mandatory bar, they are not immune.

Before moving on, a few words about the judge's reason for rejecting the justices' immunity claim. As we have noted, he reached the right result for the wrong reason. It was error to rely on the Supreme Court's decision in *Pulliam*, which interpreted § 1983 to permit a claim for prospective relief against a judicial officer acting in his judicial capacity. 466 U.S. at 541–42. Congress abrogated *Pulliam*'s holding in 1996 by amending § 1983 to expressly bar such claims. Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309, 110 Stat. 3847, 3853. As amended, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Though we have not had occasion to note the statutory abrogation of *Pulliam*, other circuits have done so. *See, e.g., Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000); *Justice Network Inc. v. Craighead County*, 931 F.3d 753, 763 (8th Cir. 2019); *Moore v. Urquhart*, 899 F.3d 1094, 1104–05 (9th Cir. 2018); *Allen v. DeBello*, 861 F.3d 433, 439 (3d Cir. 2017).

Summing up, File has standing to bring this pre-enforcement suit against the justices for an injunction blocking the enforcement of the rules requiring bar membership and payment of dues. And because the suit seeks prospec-

tive relief against them in their enforcement capacity, they are not immune.

With those threshold questions resolved, we come now to the merits. Our discussion can be brief. File's claim is squarely foreclosed by the Supreme Court's decision in *Keller*, which held that the compelled association required by an integrated bar is "justified by the State's interest in regulating the legal profession and improving the quality of legal services." 496 U.S. at 13. *Keller* further held that an integrated state bar "may … constitutionally fund activities germane to those goals out of the mandatory dues of all members." *Id.* at 14.

The Wisconsin Supreme Court follows *Keller* precisely. *See* WIS. S. CT. R. 10.03(5)(b)1 (providing that "[e]xpenditures that are not necessarily or reasonably related to the purposes of regulating the legal profession or improving the quality of legal services" may not be funded by compulsory dues). The court's rules also provide for an optional annual dues deduction for activities that are not germane to the purpose identified in *Keller* and thus may not be funded by compulsory dues. *Id.* R. 10.03(5)(b)2.[1]

File responds that *Keller* has been fatally undermined by more recent Supreme Court cases, culminating with *Janus*. The tension between *Janus* and *Keller* is hard to miss. *Keller* rests largely on *Abood v. Detroit Board of Education*, 431 U.S.

---

[1] File has not raised a *Keller* "germaneness" challenge to any specific State Bar activity funded through compulsory dues. Nor has he challenged the adequacy of the dues-deduction procedures or raised a freestanding compelled-association claim distinct from his compelled-speech claim challenging the compulsory dues.

209, 235–36 (1977), which rejected a First Amendment challenge to a law requiring public employees to pay mandatory union dues. Analogizing the relationship between a union and its members to the relationship between a state bar association and its members, *Keller* applied *Abood* to uphold California's mandatory bar. 496 U.S. at 12. The Court overruled *Abood* in *Janus*, holding that it "was poorly reasoned," had "led to practical problems and abuse," and was "inconsistent with other First Amendment cases and ha[d] been undermined by more recent decisions." 138 S. Ct. at 2460.

With *Abood* overruled, the foundations of *Keller* have been shaken. But it's not our role to decide whether it remains good law. Only the Supreme Court can answer that question. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents."). Though we long ago suggested that a lower court might be free to declare that a Supreme Court precedent has been overruled by implication, *see Levine v. Heffernan*, 864 F.2d 457, 461 (7th Cir. 1988), we now know that's incorrect. The Court's instructions are clear: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case [that] directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quotation marks omitted).

On this understanding, we have already declined an invitation to find that *Janus* implicitly overruled *Keller*, though we did so in an unpublished summary decision. *Jarchow v. State Bar of Wis.*, No. 19-3444, 2019 WL 8953257, at *1 (7th Cir. Dec. 23, 2019). Other circuits have reached the same

conclusion in published opinions. *Schell v. Chief Just. & Justs. of the Okla. Sup. Ct.*, 11 F.4th 1178, 1190–91 (10th Cir. 2021) (recognizing that *Keller* remains binding); *Taylor v. Buchanan*, 4 F.4th 406, 409 (6th Cir. 2021) (same); *McDonald v. Longley*, 4 F.4th 229, 243 n.14 (5th Cir. 2021) (same); *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 755 (5th Cir. 2021) (same); *Crowe v. Or. State Bar*, 989 F.3d 714, 725 (9th Cir. 2021) (per curiam) (same).

The Supreme Court denied certiorari in *Jarchow*, with two justices dissenting. *Jarchow v. State Bar of Wis.*, 140 S. Ct. 1720, 1721 (2020) (Thomas, J., joined by Gorsuch, J., dissenting from the denial of certiorari). The Court has turned away several additional opportunities to revisit *Keller* based on *Janus*—including, most recently, in two cases just a few weeks ago. *Firth v. McDonald*, No. 21-974, 2022 WL 994348 (U.S. Apr. 4, 2022) (mem.); *Schell v. Darby*, No. 21-779, 2022 WL 994342 (U.S. Apr. 4, 2022) (mem.); *see also Crowe v. Or. State Bar*, 142 S. Ct. 79 (2021) (mem.). *Keller* therefore remains binding on us. File must seek relief from the Supreme Court.

Affirmed

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**CERTIFIED COPY**

A True Copy
Teste:

**FINAL JUDGMENT**

April 29, 2022

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Before

DIANE S. SYKES, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

|  | SCHUYLER FILE,<br>Plaintiff - Appellant |
|---|---|
| No. 20-2387 | v. |
|  | LARRY MARTIN, Executive Director of the State Bar of Wisconsin, et al.,<br>Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 2:19-cv-01063-LA<br>Eastern District of Wisconsin<br>District Judge Lynn Adelman | |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**     (form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

May 23, 2022

To:  Gina M. Colletti
     UNITED STATES DISTRICT COURT
     Eastern District of Wisconsin
     Milwaukee, WI 53202-0000

| | |
|---|---|
| | SCHUYLER FILE,<br><br>                    Plaintiff - Appellant<br><br>v.<br><br>LARRY MARTIN, Executive Director of the State Bar of Wisconsin, et al.,<br><br>                    Defendants - Appellees |
| No. 20-2387 | |

| **Originating Case Information:** |
|---|
| District Court No: 2:19-cv-01063-LA |
| Eastern District of Wisconsin |
| District Judge Lynn Adelman |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                    No record to be returned

form name: **c7_Mandate**     (form ID: **135**)